# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY GONSALVES, | 1:09-cv-1526 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 12.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1950, has an eleventh-grade education, and previously worked as a glazer and roofer. (Administrative Record ("AR") 25-26, 105.) On October 18, 2006, Plaintiff filed applications for DIB and SSI, alleging disability beginning on March 30, 2004, due to arthritis and pain in his knees, feet, and shoulders. (AR 76-84, 92, 97.)

**A.    Medical Evidence**

   **1.    Modesto Radiology Imaging**

On January 29, 2007, X-rays of Plaintiff's left knee revealed mild degenerative changes with no acute fracture. (AR 136-37.) X-rays of Plaintiff's right shoulder, right elbow, and left ankle were "negative." (AR 136-37.)

   **2.    State Agency Physicians**

On March 7, 2007, Charles Fracchia, M.D., a state agency physician, opined that Plaintiff's physical impairments were not severe. (AR 146-47.) On May 15, 2007, another state agency physician, I. Ocrant, M.D., affirmed Dr. Fracchia's finding. (AR 148-49.)

   **3.    David Kerwin, M.D.**

On April 4, 2007, X-rays of Plaintiff's left knee revealed mild osteoarthritis but no fracture or other acute abnormality. (AR 162.)

On August 27, 2007, Dr. Kerwin, Plaintiff's family doctor, noted that Plaintiff was "ok" with medications, but "terrible if he forgets it [sic]." (AR 159.)

Dr. Kerwin completed questionnaires in April 2007 and April 2008, in which he indicated that Plaintiff was precluded from performing any full-time work at any exertional level. (AR 19-20, 154, 163.) Dr. Kerwin opined that Plaintiff had degenerative joint disease of the spine, shoulders, hand, and feet, as well as knee problems. (AR 16-17, 154, 163.) He stated that his opinion was based on Plaintiff's pain on motion, some joint swelling, decreased range of motion, and lax knee ligaments that "gave out" when Plaintiff walked. (AR 16-17, 154, 163.) In April 2007, Dr. Kerwin opined that Plaintiff could sit for two to three hours and stand and/or walk for three to four hours in

an eight-hour day. (AR 16, 154.) In April 2008, Dr. Kerwin opined that Plaintiff could sit, stand, and/or walk for three to four hours in an eight-hour day. (AR 163.) Dr. Kerwin also reported that Plaintiff had been unable to work at any exertional level since 2001 or 2002. (AR 16, 17, 154, 163.)

**4.  Rosalinda Serrano, M.D.**

On December 30, 2006, Dr. Serrano perform a consultative orthopedic evaluation of Plaintiff, who reported arthritis in his feet, knees, elbows, and shoulders. (AR 130.) Dr. Serrano noted Plaintiff's medical history as follows:

> [Plaintiff] said onset was "quite a while, probably 9-11 years ago." It started when he was working as a cable television technician for Cablevision Company. He was climbing telephone poles while working as a technician. It became worse when he started working as a window installer. When he was installing windows, he was carrying sheets of glass weighing approximately 100 pounds. He did not file a Worker's Compensation claim from these two employers.
>
> With regard to both feet, the left foot is worse. With regard to both knees and elbows, the pain is equal. With regard to both shoulders, [the] right side is worse. He describes the pain intensity as 10/10. He had insurance through these employers, but he said he has not sought medical attention about his problems because he had no time as he was working. When he stands or walks, his knees will give out and his feet will "curl out." He has not worn any knee brace. He has not had physical therapy or x-ray. He buys pain medications over the counter. When he wakes up in the morning his shoulders and elbows will hurt.
>
> Pain is less with rest, and when not doing anything, and changing position. The pain is worse with kneeling and climbing stairs. He does not use any assistive device for ambulation.

(AR 130.)

Dr. Serrano noted that Plaintiff's reported hobbies included "tinkering with watches and clocks." (AR 130.) Plaintiff's knee pain increases when he stands while washing dishes. (AR 130.) When Plaintiff vacuums, his shoulders and elbows hurt. (AR 130.) Plaintiff, however, could reportedly do all household chores, "but after doing them for a prolonged period of time he starts hurting in the affected body parts." (AR 130-31.) Dr. Serrano noted that Plaintiff's only current medication was ibuprofen. (AR 131.)

Dr. Serrano's physical examination of Plaintiff revealed that he had full grip strength and full strength in his upper extremities, with slightly decreased strength in his knees and feet. (AR 18, 132.) Plaintiff's range of motion of his extremities was normal. (AR 18, 132.)

Dr. Serrano's diagnoses included (1) sprain/strain in both shoulders, elbows, and knees; (2) bilateral foot pain; (3) rule out degenerative joint disease in both knees, shoulders, and elbows; (4) rule out any internal derangement in both knees; and (5) tendonitis in both elbows and shoulders. (AR 133.)

Dr. Serrano's functional assessment of Plaintiff was as follows:

- The number of hours Plaintiff could be expected to stand and walk in an eight-hour workday would be about six hours because of bilateral knee and foot pain.

- The number of hours Plaintiff could be expected to sit would be six hours.

- Plaintiff did not need an assistive device.

- The amount of weight Plaintiff could lift and carry both frequently and occasionally in view of bilateral shoulder and elbow pain would be 10 pounds frequently and occasionally.

- There were no postural limitations on bending, stooping, crouching, crawling, and kneeling because of bilateral knee and foot pain.

- There were no manipulative limitations on handling, feeling, and grasping.

- Reaching above the shoulders should be restricted to occasionally because of bilateral shoulder involvement.

- There were no relevant visual or communicative limitations.

- There were workplace environmental limitations such as no pushing or pulling using both lower extremities, no pushing and pulling using both upper extremities, no climbing ladders or stairs, and no working at heights.

- Plaintiff had not sought medical attention for the past 11 years regarding these problems.

(AR 133.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 35-43, 46-53.) On May 13, 2008, ALJ Sandra K. Rogers held a hearing in which Plaintiff and a vocational expert ("VE") testified. (AR 22-34.)

      **1.     Plaintiff's Testimony**

On a pain questionnaire completed on November 10, 2006, as part of his applications for DIB and SSI, Plaintiff reported that his daily living activities included driving, cooking, cleaning his house, washing laundry, and personal care. (AR 19, 103.) Plaintiff also reported taking over-the-counter ibuprofen for pain relief. (AR 102-03.)

Plaintiff testified at the hearing in May 2008 that he stopped working because his legs were "giving out on [him]." (AR 26.) Plaintiff had arthritis in his knees, feet, and shoulders, and problems with his neck, but did not have any problems with his hands. (AR 27.) He was in constant pain, but his medication helped somewhat. (AR 28.) Plaintiff had no adverse side effects from his medication. (AR 29.) Plaintiff could sit for 45 minutes at a time, stand and walk for 25 to 30 minutes at a time, and lift and carry up to 15 pounds. (AR 29-30.) Plaintiff spent his days watching television or listening to the radio and socializing with friends, but he did not do household chores. (AR 31.) Plaintiff also shopped and drove 20 to 30 miles a week. (AR 25-26.)

      **2.     Vocational Expert's Testimony**

The VE testified at the hearing that Plaintiff's past work as a glazer and roofer was heavy as performed.[2] (AR 32.) Plaintiff did not have any skills transferable to jobs at the light exertional level.[3] (AR 33.)

---

[2] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

## C. ALJ's Decision

On September 4, 2008, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability. (AR 7-21.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability, but (2) did not have an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations. (AR 12-13.)

The ALJ found that the mild degenerative changes in Plaintiff's left knee constituted a medically determinable impairment. (AR 12.) Because of a lack of objective medical evidence of underlying impairments causing Plaintiff's alleged shoulder, elbow, and foot pain, the ALJ further found that "none of these constitute[d] medically determinable impairments." (AR 12.) Accordingly, the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. (AR 12.) The ALJ, therefore, found that, after considering the evidence of record, Plaintiff had no severe impairment because the medical evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on Plaintiff's ability to work. (AR 13.)

The ALJ did not find Plaintiff's "statements regarding his pain and other symptoms convincing or credible," pointing to the objective medical evidence, Plaintiff's lack of treatment, and inconsistencies in the record. (AR 18-19.) The ALJ noted a discrepancy between Plaintiff's subjective complaints and the objective medical evidence found in Plaintiff's X-rays and normal range of motion on testing. (AR 18.) The ALJ further noted that, although Plaintiff testified that he was in constant pain, Dr. Kerwin noted in August 2007 that Plaintiff reportedly was "ok" with pain medications but felt "terrible" if he forgot to take them. (AR 18, 159.) In considering Plaintiff's credibility, the ALJ also found as follows:

> I note several specific, clear and convincing reasons in finding [Plaintiff's] testimony not credible. [Plaintiff] has reported that his pain began approximately 10 years ago, and that he stopped working in 2004 because it became too painful, and because his legs were giving out on him (hearing testimony). Yet [Plaintiff] told the consultative

physician [Dr. Serrano] that despite having health insurance while employed, he did not seek medical attention because he did not have the time to go [to] the doctor while he was working, and he had not sought medical attention in 11 years. I find it improbable that if in fact [Plaintiff] was having pain and his legs were giving out, he nonetheless lack[ed] the time to seek medical treatment despite having medical insurance. If, as [Plaintiff] alleges, it was a matter of not having time, surely once he stopped working[,] time was no longer an issue. Yet he did not seek treatment until three years later, after filing his applications.

(AR 18 (internal citations omitted).) The ALJ found that Plaintiff did not seek an aggressive or better tailored treatment program. (AR 18.) The ALJ further found inconsistencies in the record, including Plaintiff's inconsistent testimony, indicating that Plaintiff was "exaggerating his pain" and that implicated Plaintiff's veracity. (AR 18-19.)

In addition, the ALJ gave "minimal weight" to Dr. Serrano's opinion because it was based on Plaintiff's subjective statements rather than the objective medical findings and because the opinion was contradicted by the findings in Dr. Serrano's report. (AR 15.) The ALJ noted that Plaintiff had not received medical treatment in ten years, despite having medical insurance. (AR 15.) The ALJ also noted that the objective tests, including range of motion testing, were essentially normal, and that X-rays were either normal or showed only mild findings. (AR 15.) Moreover, Plaintiff "was taking nothing more than over the counter pain medication, indicating his pain was not as severe as alleged." (AR 15.)

Further, the ALJ found substantial evidence to reject Dr. Kerwin's opinions:

> First and foremost, the opinions are based on the subjective report of [Plaintiff], who I do not find credible, rather than objective medical findings. Thus[,] the doctor essentially rehashes [Plaintiff's] subjective complaints. Objective tests, as discussed above, have either been completely normal or have shown only mild degenerative changes in the left knee. Thus[,] there are no objective findings supporting a diagnosis of degenerative changes in the spine, shoulders, hands or feet. [Plaintiff] even testified that he has no difficulty using his hands, contradicting the doctor's statement.
>
> The opinion dated April 26, 2007[,] cites objective findings consisting of pain on motion, swelling, and decreased range of motion, yet the treatment notes make no mention of these findings, and the consultative physician who evaluated [Plaintiff] only 4 months earlier noted essentially normal range of motion in all extremities, contradicting Dr. Kerwin's statement. I also note that Dr. Kerwin wrote that [Plaintiff] has been so disabled for 5 to 6 years, which is contradicted by the fact that [Plaintiff] was able to perform work up until 2004. Finally, these opinions were

7

> solely at the behest of [Plaintiff's] representative, and were not prepared in the course of treatment.
>
> The totality of the treatment history and objective data provided by Dr. Kerwin simply do not mesh with his statements. Just two months after the first opinion was rendered, [Plaintiff] had reported that he was okay with medications, able to get around more, and sleeping better. Prescription medication remained unchanged for nearly a year afterwards, and no additional tests were ordered, no physical therapy was suggested, no orthopedic referrals were made, nor any further treatment other than routine care. Despite noting [Plaintiff's] statement that his knees give out, the doctor never prescribed an assistive device, which I find rather curious. In conclusion, I find the incongruity between the doctor's opinions and his medical records provides an additional specific and legitimate reason for rejecting the doctor's opinion of [Plaintiff's] limitations.

(AR 19-20.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 26, 2009. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.     Plaintiff's Appeal**

On August 26, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that, by improperly rejecting his allegations and the opinions of Drs. Serrano and Kerwin, the ALJ erred in finding that Plaintiff's impairments were not severe.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ's Evaluation of Plaintiff's Impairments**

Plaintiff maintains that the ALJ erred in finding that Plaintiff did not have a severe impairment or combination of impairments. Plaintiff contends that, in so finding, the ALJ improperly rejected Dr. Serrano's and Dr. Kerwin's opinions as well as Plaintiff's allegations. Defendant asserts, however, that the ALJ proffered specific, legitimate reasons to discount the doctors' opinions and clear, convincing reasons to discount Plaintiff's credibility. Defendant contends that substantial evidence, therefore, supports the ALJ's finding that Plaintiff's impairments were not severe.

A plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404.1520(a), 416.905, 416.920(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine

work setting, and performing ordinary physical functions like walking and sitting. *Id.* §§ 404.1521(b), 416.921(b).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairments have no more than a minimal effect on his physical or mental abilities to perform basic work activities). Social Security Ruling[4] ("SSR") 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities. SSR 96-3p. The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).

In this case, the ALJ did not find Plaintiff's "statements regarding his pain and other symptoms convincing or credible." (AR 18.) In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

11

malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 1. The ALJ Provided Specific, Clear, and Convincing Reasons to Reject Plaintiff's Testimony

First, the inconsistency of objective findings with Plaintiff's subjective complaints of pain was a clear and convincing reason to find Plaintiff not credible. In finding Plaintiff's statements regarding his pain and other symptoms not credible, the ALJ noted the discrepancy between Plaintiff's subjective complaints and the objective medical evidence, namely, normal X-rays of Plaintiff's right shoulder, right elbow, and left ankle; X-rays of Plaintiff's left knee showing only mild degenerative changes; and normal range of motion of Plaintiff's extremities. (AR 18.) Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ, therefore, properly considered the objective medical evidence in discounting Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 873-74 (9th Cir. 2003) (holding that substantial evidence supported ALJ's decision to deny

claimant's claim with respect to back, shoulder, and neck pain because, *inter alia*, X-rays, CT scans, and myelograms were normal).

Second, the ALJ noted Plaintiff's statement to Dr. Serrano that he had not sought medical attention in 11 years, despite having had insurance. (AR 18, 130, 133.) Dr. Serrano also noted in December 2006 that Plaintiff was buying ibuprofen over the counter for pain relief. (AR 130-31.) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Moreover, when a claimant testifies about disabling pain, but does not seek treatment for it or fails to comply with prescribed treatment, the ALJ may find that the claimant's pain testimony is "unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Further, the ALJ noted that Plaintiff reported to Dr. Kerwin in August 2007 that he was "ok" with his pain medications and felt "terrible" when he forgot to take them. (AR 18, 159.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for . . . benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ's finding that Plaintiff's pain was exaggerated or effectively controlled was, therefore, also a clear and convincing reason to discount Plaintiff's credibility.

Finally, the ALJ found that Plaintiff's hearing testimony that he did not do household chores contradicted his earlier statement in November 2006 that he cooked, cleaned his house, and washed laundry. (AR 19, 31, 103.) Dr. Serrano also noted in December 2006 that Plaintiff was able to do all household chores. (AR 130-31.) The ALJ, therefore, also properly considered Plaintiff's inconsistent statements in the record. *See Light*, 119 F.3d at 792 (ALJ may rely on internal contradictions in claimant's testimony to find claimant not credible).

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of

ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

### 2. The ALJ Provided Specific and Legitimate Reasons to Discount the Opinions of Drs. Serrano and Erwin

Plaintiff next asserts that the ALJ's rejection of the opinions of Drs. Serrano and Kerwin was not supported by substantial evidence or based on the application of correct legal standards. Defendant contends that the ALJ proffered specific, legitimate reasons to afford the doctors' opinions less than controlling weight.

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti*, 533 F.3d at 1041.

Here, Dr. Serrano's opinion regarding Plaintiff's ability to sit, stand, and walk was based on Plaintiff's allegation of bilateral knee and foot pain. (AR 133.) Further, Dr. Serrano's opinion

regarding Plaintiff's ability to lift and carry was based on Plaintiff's allegations of bilateral shoulder and elbow pain. (AR 133.) Dr. Serrano's opinion regarding Plaintiff's ability to reach overhead was based on Plaintiff's "bilateral shoulder involvement." (AR 133.) Finally, Dr. Serrano opined that Plaintiff's environmental limitations included no pushing or pulling with his upper extremities. (AR 133.)

In addition, Dr. Kerwin based his opinion that Plaintiff was precluded from performing any full-time work at any exertional level on Plaintiff's allegations of pain on motion, joint swelling, decreased range of motion, and lax knee ligaments that "gave out" when Plaintiff walked. (AR 16-17, 154, 163.) The ALJ gave "minimal weight" to Dr. Serrano's opinion because it was based on Plaintiff's subjective pain allegations rather than the objective medical findings, which included Plaintiff's normal range of motion and X-rays revealing at most mild degenerative changes in Plaintiff's left knee only. (AR 15.)    Further, the ALJ rejected Dr. Kerwin's opinions because they were based on Plaintiff's subjective complaints of pain. (AR 19, 154, 163.)

"A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602 (internal quotation marks omitted). Because, as explained above, the ALJ properly discounted Plaintiff's credibility regarding his symptoms, the ALJ also properly rejected the findings of Drs. Serrano and Kerwin to the extent they were based on Plaintiff's subjective complaints. *See Bray*, 554 F.3d at 1228 (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's self-reporting is not credible); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (affirming ALJ's rejection of treating physician's opinion based on claimant's self-reports, which ALJ found were not credible); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding treating physician's

15

opinion because it was premised on plaintiff's subjective complaints, which the ALJ had already discounted).

Moreover, substantial evidence supports the ALJ's finding that the objective medical evidence belied the opinions of Drs. Serrano and Kerwin regarding Plaintiff's impairments. The ALJ noted that Dr. Serrano's finding of Plaintiff's normal range of motion on testing belied Dr. Serrano's opinion regarding Plaintiff's exertional limitations, as well as Dr. Kerwin's opinion that Plaintiff had a decreased range of motion. (AR 15, 132-33, 154.) Further, negative X-rays of Plaintiff's right shoulder, right elbow, and left ankle did not support the opinions of Drs. Serrano and Kerwin relating to Plaintiff's limitations based on his shoulders, hands, feet, and knees. In particular, objective evidence did not support Dr. Kerwin's opinion that Plaintiff suffered from degenerative joint disease of the spine, shoulders, hands, and feet. (AR 19, 136-37, 163.)

Because the lack of supporting clinical findings is a valid reason for rejecting a physician's opinion, these were also specific, legitimate reasons for the ALJ to discount the opinions of Drs. Serrano and Kerwin. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Batson*, 359 F.3d at 1195 (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings). In short, the ALJ provided specific, legitimate reasons supported by substantial evidence for discounting the opinions of Drs. Serrano and Kerwin.

In sum, the ALJ gave clear and convincing reasons to find Plaintiff's testimony not credible and specific, legitimate reasons to discount the opinions of treating physician Dr. Kerwin and consultative examiner Dr. Serrano because the opinions were based on Plaintiff's subjective complaints and not supported by objective medical evidence. The ALJ's determination that Plaintiff's impairments were not severe is, therefore, supported by substantial evidence and based upon proper legal standards.

///

///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Gary Gonsalves.

IT IS SO ORDERED.

**Dated:   March 14, 2011**                                       **/s/ Sheila K. Oberto**
                                                                                                    UNITED STATES MAGISTRATE JUDGE